IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Charles R. Tackett, et al.,            Case No. 3:06 CV 7014

           Plaintiffs,            MEMORANDUM OPINION
                                     AND ORDER

-vs-                                 JUDGE JACK ZOUHARY

Village of Carey, Ohio, et al.,

           Defendants.

## CLAIMS

Plaintiffs Charles Tackett (Charles) and Linda Tackett (Linda) raise seven claims for relief in the Complaint (Doc. No. 1), including: (1) First, Fifth and Fourteenth Amendment claims under 42 U.S.C. § 1983; (2) abuse of process; (3) trespass; (4) intentional infliction of emotional distress; (5) negligent hiring, supervision and retention; (6) invasion of privacy; and (7) loss of services and consortium. The Defendants in this action are the Village of Carey (the Village), Mayor Dallas Risner (Risner) and Chief of Police Dennis Yingling (Yingling). Defendants filed a Motion for Summary Judgment (Doc. No. 20). Pursuant to Plaintiffs' Opposition Memorandum (Doc. No. 25), Plaintiffs withdraw their claims relating to the north end of Lake Street and the alleged selective enforcement of Village Ordinance 521.11. The Court held a hearing on the Motion asking counsel to address certain issues (Doc. No. 41). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

**FACTS**

Plaintiffs have owned and resided at 400 West Brown Avenue, Carey, Ohio for approximately thirty-six years. Plaintiffs allege Yingling began harassing them in 1997 by, among other things, ridiculing Charles, swearing, yelling, and entering Plaintiffs' home and property. Plaintiffs also allege Yingling closely monitored and photographed their property on numerous occasions. During this time, Plaintiffs were cited eight times under Ordinance 521.11 for having debris on their property. These citations produced five guilty pleas, two no contest pleas, and one guilty verdict following a bench trial in the Upper Sandusky Municipal Court. Following the guilty verdict in January 2005, Charles was sentenced to thirty days in jail, with the sentence to be suspended if no similar offense occurred for two years. Thus, Plaintiffs' property remained under the "continuing supervision" of the Municipal Court until January 2007.

Plaintiffs withdraw the claims relating to Ordinance 521.11, and instead contest the constitutionality of the clean up performed by Village officials on their property pursuant to Village Ordinances 1313.10 through 1313.13. Pursuant to Ordinance 1313.10, every spring the Mayor causes a notice to be published in a local newspaper ordering residents to clean their properties on or before May 10. After May 10, in accordance with Ordinance 1313.11, a Village officer inspects all public and private property in the Village and submits a report with recommendations to the Village Council (Council). If Council finds the property is not in compliance with Ordinance 1313.10, Council is authorized under 1313.12 to pass a resolution directing the owner to clean up the property within ten days of receiving a copy of the resolution. If the owner still fails to clean up the property, Ordinance 1313.12 allows Council to order the cleanup work to be done by the Village, with costs charged to the owner. Ordinance 1313.13 mandates a copy of the resolution be served personally upon the

owner, at the residence, by certified mail, or in lieu of such service, be published for two consecutive weeks in a local newspaper.

In April 2003, Risner published the general notice in a local newspaper and directed residents to clean up their property by May 10. On May 19, Council passed Resolution R2003-2 ordering Plaintiffs to clean up their property within ten days of receiving a copy of the Resolution, and informing them that if they failed to clean up the property the Village would do the work and Plaintiffs would be billed for the cost. Yingling claimed he gave Charles a copy of the Resolution and ordinances on May 21 at the police station, while Charles testified he was first informed after the clean up. It is undisputed that Charles was not advised of a right to an appeal or a hearing under 1313.10.

Yingling and city workers arrived at Plaintiffs' property to clean it up after Plaintiffs failed to address the Resolution. The parties disagree as to whether Plaintiffs had prior notice of the clean up, the extent of Charles' participation in the removal of certain items, and the type and value of items taken. Specifically, Yingling stated he told Charles about the clean up ten days prior, while Charles denied any notice. Yingling also stated he consulted with Charles about which items should be removed, while Charles testified he was ordered into the garage during the clean up. Additionally, Defendants identified most of the items taken as junk auto parts, while Charles claimed five used engines, five barrels of scrap metal and wires, two electric children's toys, two bicycles and a dog house were taken.

The clean up took approximately one hour, and did not entirely rid the property of debris. One contested item, a dog house, was taken despite Charles' objections. One year later, Linda asked Council about the dog house. Risner reported all items had been taken to the landfill. However, the

3

dog house was no longer at the landfill, and its current whereabouts are unknown. No items were ever returned to Plaintiffs. The clean up, including vehicle rental and labor, cost the Village $424.43.

In June 2004, Risner and Yingling visited Plaintiffs' property and told Charles that if he cleaned up the rest of the items within sixty days, the costs would be forgiven. Two months later, Risner and Yingling inspected the property, found no improvement and filed a lien on behalf of the Village for the $424.43. Plaintiffs filed this suit in January 2006.

## CONSTITUTIONAL VIOLATIONS

Count One of the Complaint alleges violations of the First, Fifth and Fourteenth Amendments by the Village, Risner and Yingling. Plaintiffs admit the alleged due process violations are procedural, not substantive (May 2, 2007 Hearing).

### Claims Against the Village

Nuisance abatement is a proper exercise of a municipality police power. Before property deprivation occurs, however, Plaintiffs are entitled to notice and an opportunity for a pre-deprivation hearing to present reasons why the proposed action should not take place. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Plaintiffs are entitled to due process even if the property is only temporarily taken. *Fuentes v. Shevin*, 407 U.S. 67, 84-85 (1972) ("a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment").

Assuming Plaintiffs can establish Village officers violated due process when they cleaned up the property, the Village is liable for the officers' actions through vicarious liability. A municipality can be vicariously liable under Section 1983 when Plaintiffs identify a policy or custom of violating constitutional rights. Such policies may be established through ordinances, regulations and decisions officially adopted and promulgated by the Village. *Adams v. City of Marshall*, No. 4:05-CV-62, 2006

4

WL 3825250, at *6 (W.D. Mich. Dec. 27, 2006). The Village's policy toward nuisance abatement is clearly stated in Ordinances 1313.10 through 1313.13, and was implemented against Plaintiffs in Resolution R2003-2. The Village officers complied with the language of these documents. If the officers violated Plaintiffs' constitutional rights, they did so because of the Village's nuisance abatement policy as set forth in the Ordinances and Resolution R2003-2, thus establishing vicarious liability.

Procedural due process requires adequate notice. "This right to be heard has little reality or worth unless one is informed that the matter [affecting one's property rights] is pending and can choose for himself whether to appear or default, acquiesce or contest." *Adams*, 2006 WL 38252520, at *5 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). To satisfy due process, Plaintiffs must be apprised of their right to contest the public nuisance determination and the availability and procedure for requesting a hearing. *Adams*, 2006 WL 38252520, at *6.

The parties agree that Risner published a general notice of the Village's cleanup requirement in the local newspaper on two separate days in late April. The notice informed residents that their properties must be cleaned up by May 10. On May 19, Council passed Resolution R2003-2 ordering a cleanup. Yingling states he provided a copy of the Resolution to Plaintiff on May 21; Plaintiffs, however, claim they did not receive a copy of the Resolution until after the clean up occurred. Because of conflicting testimony regarding Plaintiffs' notice of the Resolution, the Court cannot determine on summary judgment whether adequate notice was given. This dispute, however, is not material as the Court finds that even if Plaintiffs were given adequate notice, Plaintiffs were denied their due process right to a meaningful hearing.

Defendants admit the Ordinances, the newspaper notices and the Resolution do not provide for a pre or post-deprivation hearing or appeal of Council's determination. Defendants argue the previous eight citations (under Ordinance 521.11 and heard by the Upper Sandusky Municipal Court) and the manner and spirit in which the Village acted, when considered together, are sufficient to satisfy the constitutional requirement for a pre-deprivation hearing.

Even if, as they allege, Defendants waited many months before enforcing Council's Resolution, conducted multiple investigations of Plaintiffs' property, and patiently accommodated Plaintiffs' requests for extra time, these actions do not satisfy due process. Due process requires a meaningful hearing, which in this case means an opportunity to contest Council's determination that the property was in violation of Ordinance 1313.10 and the ensuing clean up. Plaintiffs were not provided such an opportunity. Whether or not Plaintiffs' property was in fact a public nuisance in violation of Ordinance 1313.10 is irrelevant to the due process inquiry. Constitutional rights to due process are extended to all notwithstanding their guilt or innocence. Plaintiffs were denied a hearing prior to the removal of their property. This establishes a violation of their constitutional rights unless Defendants can establish post-deprivation procedures were sufficient to satisfy due process.

Post-deprivation process can satisfy due process in some circumstances when only property rights are involved. *Parratt v. Taylor*, 451 U.S. 527, 538-40 (1981), overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986). "[E]ither the necessity of quick action by the State or the impracticality of providing any meaningful pre-deprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Id.* at 539.

6

Defendants admit the denial of pre-deprivation process was not based on an emergency situation or impracticality. In fact, based upon the large gap in time between the Resolution and the clean up, any argument that an emergency situation existed is without merit. *See Superior Sav. Ass'n v. Cleveland*, 501 F. Supp. 1244 (N.D. Ohio 1980) (when a municipality allows for several days to elapse between the identification of the nuisance and its abatement, the municipality cannot claim there was a necessity of quick action as a reason for disposing of notice and hearing). Therefore, the first part of the *Parratt* analysis is not met.

Nor do Defendants satisfy the second part of the *Parratt* analysis. Defendants assert meaningful post-deprivation analysis is available because it is possible to document Plaintiffs' loss as $5,754 (Pl.'s Opp. Mem., Ex. D). However, *Parratt*, requires analysis of the **propriety** of the Village's actions, not the availability of full compensation if the Village was wrong. Indeed, Defendants fail to show any manner of hearing or appeal other than Plaintiffs' appearance before this Court and therefore have not satisfied the post-deprivation exception. The Court finds the Village denied Plaintiffs a meaningful hearing in violation of procedural due process.

Although Plaintiffs argue Yingling should have sought a new resolution before taking their property because the May 2003 Resolution was over six months old, the Court cannot see how Plaintiffs were prejudiced by the additional time after the Resolution was passed. To the contrary, any additional time allowed Plaintiffs more opportunities to clean up the property on their own before incurring charges for the Village cleanup.

Finally, the Court finds it appropriate to grant summary judgment in favor of Plaintiffs on their claim of due process violations against the Village. It is within the Court's power to grant summary judgment *sua sponte*, as long as "the losing party was on notice that it had to come forward with all

7

of its evidence [and had a] reasonable opportunity to respond to all the issues to be considered by the court." *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005) (citing *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000)). The Village, through its own Motion for Summary Judgment, was on notice to provide all of its evidence on the issue of due process violations. In fact, the critical material facts, including the lack of a pre-deprivation hearing, and the lack of an emergency for post-deprivation process, are undisputed (May 2, 2007 Hearing). These undisputed facts establish Plaintiffs' procedural due process rights were violated, and summary judgment in favor of Plaintiffs is therefore appropriate.

<u>Claims Against Mayor Risner and Chief Yingling</u>

The doctrine of qualified immunity "serves to protect government officials who perform discretionary functions from both suit and liability, provided that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Revis v. Meldrum*, – F.3d —, 2007 WL 1146460, *4 (6th Cir. 2007) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In *Revis*, the court set forth the analysis to determine whether qualified immunity is appropriate:

> First, the court must determine whether the plaintiff in the civil action has demonstrated the violation of a constitutionally protected right. Second, the court must determine whether the right is so 'clearly established' that a reasonable official would understand that what he is doing violates that right. A third consideration that is occasionally examined by this court to increase the clarity of the analysis is whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Id.* (citations omitted); *see also Sample v. Bailey*, 409 F.3d 689, 696 n.3 (6th Cir. 2005).

By establishing a violation of their procedural due process rights, Plaintiffs satisfy the first step of the analysis. Plaintiffs also satisfy the second step of the analysis. Because, as noted by the court in

8

*Adams*, 2006 WL 3825250, the right to notice and a hearing is so basic that city officers are presumed to know the taking of property without such process is unlawful. *Adams*, 2006 WL 3825250. Therefore, it is "clearly established" that deprivation of property requires some form of notice and hearing, and the second step of the analysis is met.

As the court in *Revis* noted, the third step is only occasionally utilized by courts. The Court believes, however, that this is the exact type of case in which the third step helps clarify the objective reasonableness of Yingling and Risner's actions. Despite the established right to due process, reasonable mistakes may be made as to the legality of actions. *Saucier v. Katz*, 533 U.S. 194, 205 (2001). "If the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Id*; *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (the qualified immunity doctrine "provides ample protection to all but the plainly incompetent or those who knowingly violate the law").

The actions of Yingling and Risner denying Plaintiffs the right to a meaningful hearing were reasonable mistakes. They acted in accordance with the Village Ordinances, spoke with Plaintiffs on numerous occasions, and repeatedly allowed Plaintiffs additional time to clean up the property before intervention from the Village. Defendants submitted the following record of Yingling's visits to Plaintiffs' property (Yingling Aff. Ex. I):

| | |
|---|---|
| 5/21/03 | Plaintiffs served with the Resolution. Plaintiffs instructed to clear the property of the nuisance by 6/6/03 and to remove unlicensed vehicles. |
| 6/9/03 | Improvements being made. Chief Yingling to return in about one week. |
| 6/17/03 | Improvements being made. One licensed vehicle remains. Chief Yingling to keep checking the property. |

| | |
|---|---|
| 6/17/03 | Property has gotten worse. Plaintiffs informed that debris would be removed on 7/21/03. |
| 7/21/03 | Plaintiffs working on property. Some improvement. Plaintiffs allowed to keep working on property. |
| 8/12/03 | Property getting bad again with new junk cars and auto parts. |
| 9/5 and 9/8/03 | Still getting worse. |
| 10/28/03 | Photographs taken. Plaintiffs requested 48 additional hours. |
| 12/5/03 | Plaintiffs told to expect city workers on 12/8 or 12/9. |
| 12/9/03 | Clean up effectuated. |

The record does not support a conclusion that they acted incompetently or in knowing violation of the law. Plaintiffs had numerous opportunities to address the condition of their property in the Municipal Court. It is not objectively unreasonable to believe Plaintiffs were given sufficient due process before deprivation of their property. Therefore, both Defendants are entitled to qualified immunity for the alleged constitutional violations.

### STATE LAW CLAIMS

Plaintiffs allege the following state law claims: invasion of privacy; loss of services and consortium; intentional infliction of emotional distress; and trespass.

The Village is immune from these tort claims. A political subdivision cannot be held liable "in damages in a civil action for . . . loss to person or property allegedly caused by an act or omission of the political subdivision or an employee . . . in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1). A municipality may make provisions to promote the general safety, welfare, health, morals and peace of the community. *Akron ex rel. Christman-Resch v. Akron*, 159 Ohio App. 3d 673, at ¶ 21 (2005). As the purpose of nuisance abatement is to promote the health of the community, it is a governmental function. Therefore, the Village is not liable for

actions taken in connection with its nuisance abatement unless subject to an exception under Ohio Rev. Code § 2744.

Risner and Yingling are also entitled to qualified immunity. Under Ohio Rev. Code § 2744, individual defendants are immune from suit unless they acted outside the scope of their employment, acted with malice, bad faith, or wantonly/recklessly, or liability is expressly imposed by statute. There is no evidence that inspecting, issuing citations, and cleaning up Plaintiffs' property was outside the scope of their employment, or that it was done with malice or bad faith. Nor have Plaintiffs cited a statute under which liability is expressly imposed. Therefore, Risner and Yingling are also immune from Plaintiffs' state law claims.

## CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment (Doc. No. 20) is DENIED as to Count One against Defendant Village of Carey. Summary judgment is GRANTED in favor of Plaintiffs as to Count One against Defendant Village of Carey. Defendants' Motion for Summary Judgment is GRANTED as to Count One against Defendants Risner and Yingling, and GRANTED as to all remaining counts.

A telephone conference is scheduled for **May 30, 2007 at 11:00 a.m.** for further scheduling on the limited issue of damages for Count One of the Complaint.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

May 17, 2007